UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

| | |
|---|---|
| JAMES H. HARRISON, JR., | ) CLASS ACTION |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| MAKO SURGICAL CORPORATION, MAURICE R. FERRÉ, and FRITZ L. LAPORTE, | ) DEMAND FOR JURY TRIAL |
| | ) |
| Defendants. | ) |

**CLASS ACTION COMPLAINT FOR**
**VIOLATION OF FEDERAL SECURITIES LAWS**

## INTRODUCTION

1. This is a securities class action on behalf of all persons who purchased or otherwise acquired the common stock of MAKO Surgical Corporation ("MAKO" or the "Company") between January 9, 2012 and May 7, 2012, inclusive (the "Class Period"), against MAKO and certain of its officers and/or directors for violations of the Securities Exchange Act of 1934 ("1934 Act"). These claims are asserted against MAKO and certain of its officers and/or directors who made materially false and misleading statements during the Class Period in press releases, analyst conference calls, and filings with the Securities and Exchange Commission ("SEC").

2. MAKO is a medical device company that markets its advanced robotic arm solution and orthopedic implants for orthopedic procedures called MAKOplasty. The Company generates revenue from: (1) unit sales of the Company's RIO Robotic Arm Interactive Orthopedic ("RIO") system and MAKOplasty applications (collectively, the "RIO system"), including associated instrumentation, installation services, and training; (2) sales of implants and disposable products utilized in MAKOplasty procedures; and (3) sales of warranty and maintenance services.

3. During the Class Period, defendants issued materially false and misleading statements concerning the Company's financials and future business prospects. More specifically, defendants misrepresented and omitted material facts concerning the success of sales of the Company's RIO systems, among other things, and issued financial guidance for 2012 that lacked a reasonable basis when made. As a result of defendants' false statements, which hid adverse trends from the market, the price of MAKO common stock traded at artificially inflated prices during the Class Period, reaching a high of $44.98 per share on March 26, 2012.

4.  On May 7, 2012, the Company announced its first quarter 2012 financial results. Although revenue rose from the first quarter 2011, it dropped approximately 40% from the fourth quarter 2011 and missed analysts' consensus expectations by approximately 20%. While procedure volume rose 76% and procedure revenue increased 79%, the volume number also missed expectations by approximately 5%. Similarly, RIO system revenue rose only 9% as the Company only placed six of its RIO systems, missing the average analyst target of 9 placements.

5.  In conjunction with the disappointing results, the Company pointed to "missed" orders and lowered its recently-issued full-year 2012 placement guidance by four units – more than the Company "missed" in the first quarter 2012. In addition to the foregoing, utilization rates for the Company's machines dropped sequentially, falling approximately 8%. As reported by *Seeking Alpha*, MAKO experienced these slowing results "at a time when orthopedic companies like Stryker, Zimmer (ZMH), and Johnson & Johnson (JNJ) have all talked about a stable, if not improving, orthopedic procedure market."

6.  As a result, the price of MAKO common stock dropped $15.13 per share, or nearly 37%, to close at $26.27 per share on May 8, 2012, on unusual trading volume of more than 13 million shares traded.

7.  The true facts, which were known by defendants but concealed from the investing public during the Class Period, were as follows:

    (a)  the Company was poised to suffer a wider first quarter loss as it was experiencing higher costs and slower sales of its RIO systems;

    (b)  utilization rates of the Company's RIO systems were dropping;

(c) the Company's 2012 outlook provided at the start of the Class Period lacked a reasonable basis when made; and

(d) based on the above, Defendants lacked a reasonable basis for their positive statements about the Company or its outlook.

8. As a result of defendants' false statements, MAKO common stock traded at artificially inflated levels during the Class Period. When defendants revealed MAKO's true financial condition and future business prospects, the price of MAKO common stock fell more than 40% from its Class Period high.

## JURISDICTION AND VENUE

9. Jurisdiction is conferred by §27 of the 1934 Act. The claims asserted herein arise under §§10(b) and 20(a) of the 1934 Act, 15 U.S.C. §§78j(b) and 78t(a), and SEC Rule 10b-5, 17 C.F.R. §240.10b-5.

10. Venue is proper in this district pursuant to §27 of the 1934 Act. Many of the false and misleading statements were made in or issued from this district.

11. MAKO's principal executive offices are located at 2555 Davie Road, Fort Lauderdale, Florida 33317. Certain of the acts and conduct complained of herein, including dissemination of materially false and misleading information to the investing public, occurred in this district.

12. In connection with the acts and conduct alleged in the complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails and interstate wire and telephone communications.

**PARTIES**

13. Plaintiff James H. Harrison, Jr. ("Plaintiff"), purchased MAKO common stock as described in the attached certification and was damaged as set forth herein.

14. Defendant MAKO was incorporated in the State of Delaware on November 12, 2004 and, as set forth above, is headquartered in Fort Lauderdale, Florida. The Company's common stock trades on the NASDAQ Global Select Market under the ticker symbol "MAKO."

15. Defendant Maurice R. Ferré, M.D. ("Ferré") is, and at all relevant times was, President, Chief Executive Officer ("CEO"), and Chairman of the Board of MAKO.

16. Defendant Fritz L. LaPorte ("LaPorte") is, and at all relevant times was, Senior Vice President of Finance and Administration, Chief Financial Officer ("CFO") and Treasurer of MAKO.

17. Defendants Ferré and LaPorte (the "Individual Defendants" and collectively, with MAKO, "Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of MAKO's quarterly reports, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. They were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions with the Company, and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

## FRAUDULENT SCHEME AND COURSE OF BUSINESS

18. Defendants are liable for: (a) making false statements; or (b) failing to disclose adverse facts known to them about MAKO. Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of MAKO common stock was a success, as it: (a) deceived the investing public regarding MAKO's prospects and business; (b) artificially inflated the price of MAKO common stock; and (c) caused Plaintiff and other members of the Class (as defined herein) to purchase MAKO common stock at inflated prices and suffer economic loss when the revelations set forth herein reached the market.

## DEFENDANTS' FALSE AND MISLEADING
## STATEMENTS ISSUED DURING THE CLASS PERIOD

19. On January 9, 2012, MAKO issued a press release announcing selected operating results for the fourth quarter and full-year 2011 that included, among other things, the number of RIO systems sold, the number of MAKOplasty procedures performed in 2011, as well as the Company's 2012 annual guidance. The press release stated in part:

> "*We are pleased with our strong RIO system sales and the interest in our hip application during the fourth quarter. In addition, we believe the increased MAKOplasty procedure volume and utilization trends continue to demonstrate the clinical value of our technology*" said Maurice R. Ferré, M.D., President and Chief Executive Officer of MAKO. "*2011 was a positive year for MAKO and we look forward to continuing to drive the adoption of MAKOplasty in 2012*."
>
> **2012 Annual Guidance**
>
> *MAKO anticipates that it will sell 56 to 62 RIO systems and that its customers will perform 11,000 to 13,000 MAKOplasty procedures in 2012*.

20. On this news, the price of MAKO common stock rose nearly 8%, or $2.29 per share, to close at $31.07 per share on January 9, 2012.

- 5 -

21. On March 6, 2012, the Company issued a press release reporting MAKO's operating results for the fourth quarter and full-year 2011. The press release stated, in part:

> "We are pleased with our strong operating results for the fourth quarter and the full year 2011, particularly our 91% growth in revenue from the prior year. ***In addition, we believe the increased level of RIO system sales, initial interest in our hip application, increased MAKOplasty procedure volume and utilization trends point to the clinical value of our technology***" said Maurice R. Ferré, M.D., President and Chief Executive Officer of MAKO. "***We anticipate that our positive results in 2011 will carry forward into 2012 as we continue to drive the adoption of MAKOplasty***."

22. On March 8, 2012, the Company filed with the SEC on Form 10-K its annual report for the year-ended December 31, 2011. The annual report confirmed the financial results contained in the March 6, 2012 press release.

23. On May 7, 2012, MAKO issued a press release announcing its operating results for the first quarter 2012 ended March 31, 2012. As set forth above, the poor financial results revealed in the press release widely missed analyst and market expectations. The press release stated in part:

> RIO Systems – Six RIO systems were sold during the first quarter, of which five were sold to domestic customers and one was sold to our distributor in Japan, for use in securing regulatory approvals and to demonstrate MAKOplasty to build interest in that market. These six RIO systems bring MAKO's worldwide commercial installed base of RIO systems to 118 systems and domestic commercial installed base to 116 systems as of March 31, 2012. The revenue associated with the sale of the international system was deferred due to a contingent obligation to reimburse the distributor for the costs it incurs in the regulatory process should the agreement be terminated prior to obtaining regulatory approval. The revenue associated with this sale will be recognized upon obtaining regulatory approval.
>
> MAKOplasty Procedure Volume – During the first quarter, 2,297 MAKOplasty procedures were performed, of which 2,219 were performed at domestic sites. Of the 2,219 domestic procedures, 211 were Total Hip Arthroplasty (THA) procedures. The 2,297 MAKOplasty procedures performed represent a 2% increase over the procedures performed in the fourth quarter of 2011 and a 76% increase over the procedures performed in the first quarter of 2011. The average monthly utilization per system was 6.6 procedures during the first quarter of 2012, a decrease from 7.2 procedures per system per month in the fourth quarter of 2011 and an increase from 6.2 procedures per system per month in the first quarter of 2011. Through March 31,

2012, over 15,000 procedures had been performed since the first procedure in June 2006.

\*       \*       \*

"*While the first quarter is typically our slowest quarter of the year and system placements are very difficult to predict on a quarterly basis, our results this quarter were at the low end of our expectations*," said Maurice R. Ferré, M.D., President and Chief Executive Officer of MAKO.  "On the positive side, we were encouraged by the continued interest shown in our hip application and the quality and quantity of clinical data that continues to be generated that supports the clinical and economic benefit of MAKOplasty.  Additionally, we are pleased to have enhanced our working capital flexibility through a credit facility arrangement with Deerfield, an acknowledged leader in health care investing."

2012 First Quarter Financial Review

Revenue was $19.6 million in the first quarter of 2012 compared to $13.0 million in the first quarter of 2011, representing a 51% increase.  Revenue in the first quarter of 2012 primarily consisted of $11.6 million in revenue from the sale of implants and disposables used in the 2,297 MAKOplasty procedures performed in the quarter, $5.9 million in revenue from the sale of five domestic RIO systems and nine MAKOplasty THA applications to existing customers, and $2.2 million in revenue from service.

Gross profit for the first quarter of 2012 was $14.2 million compared to a gross profit of $8.9 million in the same period in 2011. Gross margin for the first quarter of 2012 was 72%, consisting of a 77% margin on procedure revenue, a 58% margin on RIO system revenue and an 83% margin on service revenue.

Operating expenses were $25.9 million in the first quarter of 2012 compared to $20.0 million in the first quarter of 2011.  The increase in operating expenses was primarily attributable to the following: an increase in sales and marketing activities for the continued expansion of the direct sales force and commercialization of the RIO system, MAKOplasty applications and RESTORIS implant systems; an increase in research and development activities associated with continuous improvement of the RIO system and MAKOplasty applications and the development of potential future products; and an increase in general and administrative costs as MAKO continued to build infrastructure to support growth.

*Net loss for the three months ended March 31, 2012 was $11.7 million, or $(0.28) per basic and diluted share, based on average basic and diluted shares outstanding of 41.7 million*.  This compares to a net loss for the same period in 2011 of $11.0 million, or $(0.27) per basic and diluted share, based on average basic and diluted shares outstanding of 40.1 million.

> Cash, cash equivalents and investments were $46.8 million as of March 31, 2012 compared to $58.7 million as of December 31, 2011.
>
> Outlook
>
> ***Based on the slower than expected start to the year, MAKO now anticipates selling 52 to 58 RIO systems in 2012, which compares to prior guidance of 56 to 62 RIO system sales***. MAKOplasty procedure guidance remains unchanged at 11,000 to 13,000 expected procedures in 2012.

24. As a result, the price of MAKO common stock dropped $15.13 per share, or nearly 37%, to close at $26.27 per share on May 8, 2012, on unusual trading volume of more than 13 million shares traded.

25. Securities analysts quickly reacted to the abrupt lowering of the Company's guidance. In an article titled "MAKO shares plunge on weak results, outlook," *Reuters.com* reported as follows:

> Mako now expects to sell 52 to 58 RIO systems -- a robotic-arm interactive system used for minimally invasive knee procedures -- during the full year. It had previously forecast sales of 56 to 62 RIO systems.
>
> "While management reduced its guidance by a small amount, we are concerned that it remains too high and see a risk of further misses and/or guidance reductions," Mizuho Securities analyst Michael Matson wrote, downgrading the stock to "neutral" from "buy".
>
> Echoing Matson's view, William Blair & Co analyst Matthew O'Brien said the revised outlook range requires a strong performance from Mako during the remainder of the year, which may prove challenging as the sales cycle appears to be showing only modest improvement.
>
> Matson downgraded Mako shares to "market perform" from "outperform".
>
> Mako shares, which have gained 44 percent since the company gave an upbeat outlook for 2012 in January, fell 33 percent to $27.89 on Tuesday on the Nasdaq.

26. The true facts, which were known by Defendants but concealed from the investing public during the Class Period, were as follows:

- 8 -

(a) the Company was poised to suffer a wider first quarter loss as it was experiencing higher costs and slower sales of its RIO systems;

(b) utilization rates of the Company's RIO systems were dropping;

(c) the Company's 2012 outlook provided at the start of the Class Period lacked a reasonable basis when made; and

(d) based on the above, Defendants lacked a reasonable basis for their positive statements about the Company or its outlook.

## ADDITIONAL SCIENTER ALLEGATIONS

27. As alleged herein, Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading, knew that such statements or documents would be issued or disseminated to the investing public, and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding MAKO, their control over, and/or receipt and/or modification of allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning MAKO, participated in the fraudulent scheme alleged herein.

## LOSS CAUSATION/ECONOMIC LOSS

28. During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of MAKO common stock and operated as a fraud or deceit on Class Period purchasers of MAKO common stock by

failing to disclose and misrepresenting the adverse facts detailed herein.  When Defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the price of MAKO common stock fell precipitously as the prior artificial inflation came out.  As a result of their purchases of MAKO common stock during the Class Period, Plaintiff and the other Class members suffered economic loss, *i.e.*, damages, under the federal securities laws when the truth about MAKO was revealed through the May 7, 2012 disclosure that removed the artificial inflation from the price of MAKO common stock.

29.     By failing to disclose to investors the adverse facts detailed herein, Defendants presented a misleading picture of MAKO's business and prospects.  Defendants' false and misleading statements had the intended effect and caused MAKO common stock to trade at artificially inflated levels throughout the Class Period, reaching as high as $44.98 per share on March 26, 2012.

30.     As a direct result of the disclosure on May 7, 2012, the price of MAKO common stock fell precipitously.  This drop removed the artificial inflation from the price of MAKO common stock, causing real economic loss to investors who had purchased MAKO common stock at artificially inflated prices during the Class Period.

31.     This decline was a direct result of the nature and extent of Defendants' fraud being revealed to investors and the market.  The timing and magnitude of the price decline in MAKO common stock negates any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to Defendants' fraudulent conduct.  The economic loss, *i.e.*, damages, suffered by Plaintiff and the other Class members was a direct result of Defendants' fraudulent scheme to

artificially inflate the price of MAKO common stock and the subsequent significant decline in the value of MAKO common stock when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

## APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET DOCTRINE

32. At all relevant times, the market for MAKO common stock was an efficient market for the following reasons, among others:

(a) MAKO common stock met the requirements for listing and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, MAKO filed periodic public reports with the SEC and the NASDAQ;

(c) MAKO regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d) MAKO was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

33. As a result of the foregoing, the market for MAKO common stock promptly digested current information regarding MAKO from all publicly available sources and reflected such information in the price of the stock. Under these circumstances, all purchasers of MAKO common

stock during the Class Period suffered similar injury through their purchase of MAKO common stock at artificially inflated prices, and a presumption of reliance applies.

## NO SAFE HARBOR

34.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of MAKO who knew that the statement was false when made.

## CLASS ACTION ALLEGATIONS

35.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired MAKO common stock during the Class Period (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

36. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. MAKO has more than 42 million shares of stock outstanding, owned by hundreds, if not thousands, of persons.

37. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

    (a) whether Defendants violated the 1934 Act;

    (b) whether Defendants omitted and/or misrepresented material facts;

    (c) whether Defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

    (d) whether Defendants knew or deliberately disregarded that their statements were false and misleading;

    (e) whether the price of MAKO common stock was artificially inflated; and

    (f) the extent of damage sustained by Class members and the appropriate measure of damages.

38. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

39. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

40. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## COUNT I

### FOR VIOLATION OF SECTION 10(b) OF THE 1934 ACT AND RULE 10b-5 AGAINST ALL DEFENDANTS

41. Plaintiff incorporates ¶¶1-40 by reference.

42. During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

43. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a) employed devices, schemes, and artifices to defraud;

(b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c) engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of MAKO common stock during the Class Period.

44. By virtue of the foregoing, MAKO and the Individual Defendants have each violated §10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder.

45. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the Class have suffered damages in connection with their respective purchases and sales of MAKO common stock during the Class Period, because, in reliance on the integrity of the market, they paid

artificially inflated prices for MAKO common stock and experienced loses when the artificial inflation was released from MAKO common stock as a result of the revelation and stock price decline detailed herein. Plaintiff and the Class would not have purchased MAKO common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

## COUNT II

### FOR VIOLATION OF SECTION 20(a) OF THE 1934 ACT AGAINST THE INDIVIDUAL DEFENDANTS

46.     Plaintiff incorporates ¶¶1-40 by reference.

47.     The Individual Defendants acted as controlling persons of MAKO within the meaning of §20(a) of the 1934 Act. By reason of their controlling positions with the Company, the Individual Defendants had the power and authority to cause MAKO to engage in the wrongful conduct complained of herein. By reason of such conduct, the Individual Defendants are liable pursuant to §20(a) of the 1934 Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A)     Declaring this action to be a proper class action pursuant to Fed. R. Civ. P. 23;

B)     Awarding Plaintiff and the members of the Class damages, including interest;

C)     Awarding Plaintiff reasonable costs and attorneys' fees; and

D)     Awarding such equitable, injunctive, or other relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED:  May 10, 2012        **ROBBINS GELLER RUDMAN
     & DOWD LLP**

*/s/ Robert J. Robbins*
Robert J. Robbins

PAUL J. GELLER
Florida Bar No. 984795
DAVID J. GEORGE
Florida Bar No. 0898570
ROBERT J. ROBBINS
Florida Bar No. 0572233
120 East Palmetto Park Road, Suite 500
Boca Raton, Fl  33432
Telephone:  561/750-3000
561/750-3364 (fax)
pgeller@rgrdlaw.com
dgeorge@rgrdlaw.com
rrobbins@rgrdlaw.com

**LAW OFFICE OF ALFRED G.
   YATES, JR., P.C.**
ALFRED G. YATES, JR.
519 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219
Phone: (412) 391-5164
Fax: (412) 471-1033
yateslaw@aol.com

*Attorneys for Plaintiff*